QUESTION: What is the statutory procedure to be followed by a police department in regard to disposition of lost bicycles found by department personnel or turned in to the department?
SUMMARY: Other than the limited provisions of s. 715.01, F. S., there is no general law in Florida providing any procedure to be followed in disposing of lost (rather than abandoned or derelict) personal property which is found by, or turned in to, a local police department. In the absence of statutory procedures, the principles of the common law of property govern lost personal property and the property rights in or title thereto. You stated in your letter that you seek advice "as to the procedure for disposing of bicycles found by the police department or otherwise turned in to the police department as lost property." (Emphasis supplied.) You then referred to two provisions of the Florida Statutes — ss. 705.01 and 715.01 — as appearing to be applicable, and also as appearing to be in conflict. First, it should be established that s. 705.01, F. S., is not applicable in this instance. That section applies by its terms to property which is abandoned or derelict, as opposed to property which is lost. Also, although you did not mention it, I would note that s. 705.16, F. S., is likewise not applicable. Not only is its application limited to abandoned — as opposed to lost — property, but s. 705.16 has the additional requirement that the abandoned property has "no value other than nominal salvage value, if any." Abandonment of property is distinguishable from a loss or neglect of property by virtue of the intent required for abandonment: Abandoned property is that of which the owner has relinquished all right, title, claim, and possession, with the intention of not reclaiming it or resuming its ownership, possession or enjoyment. [Jackson v. Steinberg, 200 P.2d 376 (Ore. 1948); emphasis supplied.] Cf. s. 705.16(2)(b), and 1 C.J.S. Abandonment ss. 2, 3, and 9. In regard to what constitutes lost property, it has been stated: The rule as laid down by many authorities is: "Goods or chattels are lost in the legal sense of the word only when the possession has been casually or involuntarily been parted with, so that the mind has no impress of, and can have no recourse to, the event." [Automobile Ins. Co. of Hartford, Conn. v. Kirby, 144 So. 123, 124 (Ala.App. 1932); emphasis supplied.] Of course, the nature of any such property "is to be determined from all the facts and circumstances of the particular case, and in accordance with the rule governing personal property generally." 36A C.J.S. Finding Lost Goods s. 1. In general, lost property is subject to the principles of the common law of property, except where, and to the extent that, such common law has been abrogated by state statute. In some states, there have been enacted statutes specifying procedures which must be followed by a finder of lost property, such as advertising a description of the property or depositing it with some governmental agency. However, no such general law applicable to local governments has been enacted in Florida. Cf. s. 705.18, F. S., providing a procedure for disposal of lost personal property at the several state universities. There now exists only the aforementioned s. 715.01, F. S., which simply provides that a finder — other than one who is an employee of a public transportation system — is vested with title to personal property found in or upon certain public conveyances and public places, subject to claim by the righful owner within a period of 6 months after the finding of the property. The statute is devoid of any procedure establishing duties or liabilities to be borne by the finder or any third party (e.g., a police department) to whom the finder might entrust the property. Thus, for your information and assistance, I offer the following general observations in regard to some of the applicable common law principles. In 36A C.J.S. Finding Lost Goods s. 5, the following is provided regarding a finder who delivers the found property to a third party (such as a police department): Where the finder of a lost article has delivered it to a third person to be kept for the owner, or for the finder in case the owner does not claim it, the finder, on the refusal of the bailee to return the article, may recover it, if no claim has in the meantime been made by the true owner. However, where a bailee of a finder ascertains that the finder has the intention wrongfully to convert the property to his own use, it becomes the duty of the bailee to retain it until the owner can be found. Similarly, s. 8 of 36A C.J.S. Finding Lost Goods provides that "the finder may protect his rights by an action against anyone who infringes on them. He may defend the property against all others than the true owner with every remedy which is available to a bailee." (Emphasis supplied.) The above refers to the rights of a finder. As to the obligation of a finder, the following statement should first be considered: It is entirely at the option of the finder of lost property whether he will or will not take possession of it; if he does he should restore it to its owner, and he should, in the absence of knowledge as to who the true owner is, follow any procedure required by statute for discovering the owner, such as notifying the town clerk, or otherwise reporting the find, posting notices in public places in town, and depositing the goods with the proper authorities. [36A C.J.S. Finding Lost Goods s. 7; emphasis supplied.] (In regard to the above, I would reemphasize that s. 715.01, F. S., contains no such procedure to be followed by the finder of lost property.) It is further stated, in s. 7 of 36A C.J.S. Finding Lost Goods that "[o]ne who has found an article and assumed possession of it is bound to exercise only slight diligence, and is responsible only for gross neglect." Thus, absent specific statutory procedures, a finder of lost property appears to be charged with few obligations under the common law. In regard to lost property, it is clear that both the loser/rightful owner and the finder have protectable and enforceable interests. As an example, either party might maintain an action for conversion: "In this state an action for conversion is regarded as a possessory action, and the plaintiff, in order to maintain this action, must have a present or immediate right of possession of the property in question." Allen v. Universal C.I.T. Credit Corporation, 133 So.2d 442, 445-446 (1 D.C.A. Fla., 1961). For that matter, the right to such an action can extend even to a bailee to whom a finder entrusts lost property: "a bailee may maintain an action for conversion if he has a present or immediate right of possession to the property." Treasure Cay, Ltd. v. Investors Inter. Const. Corp., 259 So.2d 169, 171 (4 D.C.A. Fla., 1972). There would also appear to be other remedies available: The true owner may enforce his rights against the finder by trover or replevin, or, if it was money that was lost, or if he seeks to recover the proceeds from the finder's sale and coversion of the property, he may bring an action against the finder for money had and received. However, the finder may retain possession of the property until the owner furnishes proof of his ownership, and for doing this he is not liable as for conversion. [36A C.J.S., p. 426; emphasis supplied.] There is no statute of repose other than s. 715.01, supra, and there does not appear to be any common law period of repose (for the duration of which a finder would be required to hold the lost property for the owner). Thus, until the Legislature clarifies the rights and obligations of owners and finders of lost property, I would offer the suggestion that a city might, under the circumstances implicit in your inquiry, establish reasonable criteria whereby lost bicycles in custody and possession of the police department are advertised in a newspaper of general circulation and the owners thereby notified that the bicycles have been found and, if not claimed within a reasonable time, will be sold by the city at public auction. Any such procedure formulated by a municipality would not, of course, change any party's rights or obligations under the common law of property. Rather, it would be simply a temporary, administrative measure designed to facilitate the handling of lost bicycles until such time as the Legislature adopts a general law covering all aspects of lost property.